CHARLES E. FLEMING AND OTHERS, APPELLANTS, *v.* EGBERT L. BURNHAM, APPELLANT, IMPLEADED, ETC.

IN THE MATTER OF MEYER STEINBERGER, PURCHASER, RESPONDENT.

*Power of sale given to executors —presumption that the executors signing a deed were all the acting executors — purchaser at a judicial sale — he cannot insist upon a perfect record title.*

APPEAL from an order of the Special Term relieving Meyer Steinberger, a purchaser at a referee's sale in an action for partition, from completing his purchase.

The court at General Term said : " In this case the purchaser moved at Special Term to be relieved from his purchase at the partition sale upon fifteen grounds, stated in the schedule annexed to his affidavit. The principal one of these grounds is that no title vested in Gerardus De Forest, the purchaser of the premises by deed executed by Thomas McKie and Andrew Stark, two executors of John McKie, deceased, for the reason that the deed was executed by two only of the three executors to whom a power of sale was given by the will of John KcKie. It appears that John McKie acquired title to the premises in question in 1806, by a grant from the corporation of the city of New York. He died in the year 1828, seized of the premises, leaving a last will and testament which, among other things, provided as follows :

" ' For the more easy and equitable distribution and settlement of my estate in the manner and the proportions aforesaid, I do hereby direct and fully authorize and empower my executors hereinafter named, or such one or more of them as shall take upon him or themselves the burthen of the execution of this my will, as soon as convenient after my decease, to sell and dispose of all and singular my real estate, be the same where it may, and to make and execute to the purchaser or purchasers thereof good and sufficient deed or deeds of conveyance for the same ; and to pay and apply the proceeds thereof in the manner and proportions hereinbefore by me directed concerning the same.'

"The will nominated four persons therein named as executors, 'with full power for them, or such one or more of them as shall take upon him or themselves the burthen of the execution of this my will, to do all and every act, matter and thing needful and necessary to carry this my last will and testament into full effect, according to the true intent and meaning thereof, in the same manner as if all of my said executors had taken upon themselves the burthen of the execution thereof.'

"It appears that the will was proved in October, 1828, as a will of personal estate only; and letters testamentary were issued to three of the executors named in it, to wit, Thomas McKie, William McKie and Andrew Stark. It was subsequently proved as a will of real estate in 1833, but it does not appear that any further letters testamentary were issued. The original of the deed from the city of New York to John McKie was never recorded. The premises before his decease had been sold for taxes, and in 1832 the mayor, etc., of the city of New York executed a deed to Andrew Stark and Thomas McKie, as acting executors of John McKie, deceased, who are described in the deed as lawfully seized of the premises thereby granted and conveyed. In this deed the original deed of the city to John McKie is recited. On the 14th of February, 1833, Thomas McKie and Andrew Stark, as acting executors of John McKie; conveyed the premises to Gerardus De Forest, by deed recorded June 6, 1833. That deed describes the grantors as acting executors of John McKie, and recites the authority conferred by the will upon 'the executors therein named, or such one or more of them as should take upon him or themselves the burthen of the execution of the said will, as soon as convenient after his decease, to sell and dispose of all and singular his real estate, be the same where it might, and to make and execute to the purchaser thereof good and sufficient deed or deeds of conveyance for the same,' and refers to the will for their authority. It recites the steps for the sale of the property at public vendue after due notice of the time and place of sale pursuant to the direction of the statute in such case made and provided, and that the same was struck off to the said Gerardus De Forest for the sum of $16,150, being the highest sum offered or bid for the same. De Forest entered into possession

under the deed and the premises have been in the actual possession of himself and his heirs and grantees from 1833 to the present time. De Forest died in March, 1872, as the case states, seized and possessed of the premises, and since 1833 no person, other than De Forest, his heirs and grantees, has been in possession or claimed any right or title to the premises so far as the case discloses. At the time of the execution of the deed by the two executors above-named, William McKie was living and continued in life for several years thereafter. More than fifty years have elapsed since the execution of the deed by the two executors claiming to be the acting executors of John McKie. Their power to execute a deed in that capacity seems never to have been doubted or questioned. It is not disputed but that they received the consideration of the sale, to wit, the $16,150 from the purchaser De Forest; and the law presumes that they proceeded to and did distribute the proceeds of the sale according to the directions of the will, and that William McKie, as one of the children of John and as a beneficiary under the will, duly received his share of such proceeds. Nobody interested in the property disturbed, or sought to disturb, the title or possession of De Forest, and since the validity of the execution of the power by the executors depends upon the question whether or not in fact they were at that time the sole acting executors, the law, in our opinion, conclusively presumes upon the facts stated, after the lapse of so great a period of time that such was the case. The recitals of the deed described them as 'the acting executors.' The act of selling and conveying was performed by them as such, and the distributees of the proceeds of the will having undoubtedly received the same with full knowledge of the action of the two executors, would if living be estopped from asserting that there was at the time another acting executor. If it were necessary to establish the fact that William McKie executed a formal renunciation of his office as executor, that fact after so great a lapse of time should be presumed. But that was not necessary. It was enough to satisfy the requirements of the law that for some reason he had refused or declined to act, or was incapacitated in fact or in law from acting. In *Roseboom* v. *Mosher* (2 Denio, 61), and *Sharp* v. *Pratt* (15 Wend., 610), similar questions were presented and the reasoning of those cases establishes what accords, we think, with the duty of the courts and the

good sense of the law. The presumption, after so great a lapse of time, that the acting executors were such in law and in fact is to be adopted and upheld, for the purpose of protecting and quieting the title of the purchaser and his heirs or assigns. We are of opinion, therefore, that on this ground the title of Gerardus DeForest, and of all who have acquired title by or through him, must be declared to have been good and valid at the time of the sale in these proceedings.

"But upon the facts appearing in this case, the claim of title taken by DeForest under which he entered and he and his heirs and grantees have remained in possession for fifty years claiming title, was adverse to any right or interest of William McKie and his heirs, and adverse to the devisees of any right, title or interest in the premises under the will of John McKie, and his adverse possession upon the facts appearing in this case has ripened into a good and sufficient title, so that the purchaser at the sale, so far as relates to any question growing out of the due execution of the power, or out of the devises of the will, would have acquired a good title upon the sale. (*Cahill* v. *Palmer*, 45 N. Y., 485; *Ward* v. *Warren*, 82 id., 265; *Woolsey* v. *Morss*, 19 Hun, 273.)

\* \* \* "It is not correct, as stated in the opinion of the judge at Special Term, that a purchaser at such a sale is not 'bound to run any risk whatever as to his title' and in effect need not complete his purchase where there is any risk upon any of the questions raised. (See *Otterburg* v. *Strasburger*. MS. op. DANIELS, J.; *Shriver* v. *Shriver*, 86 N. Y., 575; *Hellriege* v. *Manning*, 31 Alb. L. J., 13.) In which latter case, it is said in substance, that there is no inflexible rule that the purchaser must be furnished with a perfect record or paper title, and it is not sufficient for him merely to raise a doubt as to the title, but he must show such a reasonable doubt as affects the value of the property and interferes with its sale to a reasonable purchaser and thus render the land unmarketable. This case, we think, modifies to some extent the rule laid down in *Jordan* v. *Poillon*, as quoted by this court in *Argall* v. *Raynor* (20 Hun, 267), and this case differs from that one, in the respect that from facts appearing upon the face of the record the supposed title or interest of persons not parties to the record appear to have no

existence. In that case the outstanding titles apparently did exist."

*Alexander Thain*, for the plaintiff, appellant.

*M. L. Townsend*, for the defendant, appellant.

*S. Riker*, for the purchaser, respondent.

Opinion by DAVIS, P. J.; DANIELS, J., concurred.

Order reversed with ten dollars costs and disbursements, and order entered as directed in opinion.